Argued February 6, affirmed July 5, 1974

# MOORE, *Appellant, v.* DRENNAN, *Respondent.*

523 P2d 1250

*Phillip M. Margolin,* Portland, argued the cause for appellant. With him on the briefs were Nels Peterson, and Peterson, Chaivoe & Peterson, Portland.

*George M. Joseph,* Portland, argued the cause for respondent. With him on the brief were Bemis, Breathouwer & Joseph, Portland.

BRYSON, J.

Plaintiff brought this action for personal injuries as the result of an automobile accident on February 2, 1970. Defendant ran into the rear of a car in which plaintiff was a passenger. Judgment was entered on a jury verdict for plaintiff in the sum of $30 general damages and $70 special damages.

Plaintiff appeals, first contending that the court erred in admitting "into evidence plaintiff's original complaint, amended complaint and second amended complaint."

Filed January 4, 1972, plaintiff's original complaint alleged "a tearing, twisting and wrenching of the bones, tendons, muscles, ligaments, nerves and soft tissue of her left knee and her back, known to medical science as a lumbo-sacro sprain, together with aggravation of a pre-existing injury to a left knee joint * * *," demanding $15,000 general damages and $541 special damages.

Filed on August 24, 1972, plaintiff's first amended complaint alleged injuries to "her left knee, neck, and her back, known to medical science as a lumbo-sacro sprain, with narrowing of the disc space between the 5th lumbar vertebra and the first sacral segment together with aggravation of a pre-existing injury to a left knee joint * * *," demanding $30,000 general damages and $597 special damages.

On January 17, 1973, plaintiff filed a second amended complaint alleging injuries to "her left knee, neck and her lower back, and a herniated or ruptured intervertebral disc in her lower back, and aggravation of a pre-existing injury to her left knee joint; plaintiff has been required to undergo surgery for the removal of the lumbar disc between the fifth lumbar vertebra and the first sacral segment; * * * that plaintiff has permanent injuries to her neck, back and left knee joint, and her right leg * * *," demanding $115,000 general damages and $6,367.64 special damages.

■ Plaintiff argues that although the complaints originally filed were different than the complaint the case went to trial on, they were not inconsistent. Wigmore states the applicable general rule as follows:

"Thus, in effect and broadly, *anything said by the party-opponent may be used against him as an admission,* provided it exhibits the quality of in-

consistency with the facts now asserted by him in pleadings or in testimony. (This proviso never needs to be enforced, because no party offers thus his opponent's statement unless it does appear to be inconsistent.)" 4 J. Wigmore, Evidence § 1048 at 4 (Chadbourn rev 1972). (Original emphasis.)

This court, and the majority of courts, follow the rule that where a complainant's pleading is subsequently abandoned or superseded, the original pleading is admissible as an evidentiary admission to refute or impeach the present pleading or testimony of the complainant, subject to the right of the complainant to explain any inconsistency. In *Klemgard et al v. Wade Seed Co.,* 217 Or 409, 414, 342 P2d 757 (1959), wherein an amended complaint gave a different version than plaintiff's original complaint, we held it was proper to receive the prior complaint in evidence, stating:

> "Although a pleading loses its status as such when it is superseded by an amended one, it never vanishes from the files. If it contains something adverse to the pleader's position it is always available for introduction as an item of evidence. The observation just made is so well established in this state that it is unnecessary to cite authorities. * * * *"

*Accord,* Annot., 52 ALR2d 516, § 3 (a) (1957); McCormick, Law of Evidence § 265 at 634 (2d ed Cleary 1972).

■ In the case at bar, plaintiff's original complaint alleged that she sustained a lumbo-sacro sprain in her back. At the time of trial the complaint alleged a herniated intervertebral disc. Each complaint demanded substantially greater damages.

Defendant elicited Dr. Geist's testimony that he had made no record of any complaints of back pain by plaintiff until plaintiff's office visit of May 4, 1970,

some three months after the accident. Plaintiff reported back pain after doing some gardening. Dr. Geist noted in his records, "This certainly sounds like an acute low-back strain. She has not had back symptoms secondary to her injury of a few months ago, and I doubt that this has anything to do with that injury." Dr. Geist attempted to explain this notation by stating that he later changed his diagnosis, and that he was not sure of the reason there were no earlier notations of low back pain in his records.

■■ A statement of fact in a party's pleading is an admission that the fact exists as stated. *Marsh v. Davidson,* 265 Or 532, 537, 510 P2d 558, 560 (1973). The admissions in plaintiff's prior pleadings were not consistent with plaintiff's pleadings and testimony at trial. After prior pleadings are received in evidence the pleading party can introduce evidence to explain the allegations in the abandoned pleadings. *Beck v. General Ins. Co.,* 141 Or 446, 455-56, 18 P2d 579, 582 (1933), but the weight to be accorded the former pleadings is a matter for the jury. We find no error in this respect.

Plaintiff next contends that the court erred "by denying appellant's [plaintiff's] motion for a mistrial after the jury first improperly brought in a verdict for special damages without an award for general damages and then stubbornly attempted to adhere to its invalid verdict, in disregard of the instructions from the court, by apportioning the sum of the first verdict between general and special damages and returning a second verdict for the same sum as the first verdict." The plaintiff moved for a mistrial after the second verdict was returned. The court denied the motion and entered judgment on the jury's verdict.

It is apparent from the opening statements, evidence, and final arguments that the principal issue during the trial was whether or not plaintiff's injuries were caused by defendant's negligence. The accident occurred in February in Portland on S. W. Canyon Road in bumper-to-bumper, "home from work," stop-and-go traffic. Defendant testified he was going three to five miles per hour at the time he slid on sand and into the car in which plaintiff was a front-seat passenger; that he asked plaintiff "if she was all right. And she said, 'Yes, I'm fine.'" Another motorist, Harmon, observed the contact of the two cars. He testified that the speed of defendant's car at the time of impact "[c]ouldn'ta been much more than five miles an hour, if that." He was asked:

"Q. Was there any apparent injury to either one of them [driver and plaintiff]?

"A. No. Just the people bein' upset is about the extent of it.

"* * * * *.

"A. It was the passenger that, when she was in the car, I went up to see if she was all right and noticed that—that something was wrong as far as —she had either been in the hospital or had some physical ailment before the accident, and I was kinda concerned that maybe this would put her in shock or something, which she said, no, that she was all right, just shook up."

He was asked to describe the contact between the two vehicles and he stated "[i]t was very minor."

Plaintiff's doctor examined plaintiff's neck after the accident and concluded that she had suffered an acute strain or sprain in the neck and right shoulder and aggravation of pre-existing severe osteoarthritis of the left knee. This diagnosis was based in part on

plaintiff's account of the accident as rather severe and on the fact that plaintiff stated that she felt *immediate* pain in her neck, right shoulder, and left knee. Plaintiff's doctor discovered that plaintiff's neck motion was "extremely limited" and that her neck muscles were tender and spasmodic. However, he found no nerve damage, and plaintiff's cervical x-rays were normal. Much of the proof of plaintiff's neck injury rested largely on plaintiff's own subjective complaints of pain.

The cause of the injury to plaintiff's back was similarly subject to dispute. Dr. Geist stated that plaintiff had had continual tenderness in the lower back from the time of the accident and that plaintiff's medical history consistently related the back problem to the accident. However, the first indication in Dr. Geist's office notes that plaintiff had a significant injury to her back appears on May 4, 1970, several months after the accident, when plaintiff reported that she had been doing some gardening and was unable to get up. At that time, Dr. Geist diagnosed the injury as an acute low back strain and he opined that the strain was unrelated to the traffic accident with defendant. Dr. Geist was unable to account for the absence of an earlier notation of back pain in plaintiff's record.

Under this state of the evidence the jury could rationally disbelieve plaintiff and her medical witnesses and assess such damages as it found reasonable but not allow plaintiff damages for the permanent and severe injuries which were pleaded and might have stemmed from other causes. The record discloses that plaintiff had a long history of over 20 years' suffering from advanced osteoarthritis.

In *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971), this court recognized that a jury may be justified in awarding special damages and in refusing to award substantial general damages in a case where, as in this case, the jury could have found that plaintiff's injuries were at most minimal, as distinguished from a case in which plaintiff clearly suffered some serious injury, and that under such circumstances the rule of *Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965), is not applicable. *Cf. Chopp v. Miller,* 264 Or 138, 504 P2d 106 (1972).

The rule of *Saum v. Bonar, supra,* was not applied in *Brannan v. Slemp,* 260 Or 336, 490 P2d 979 (1971), because this court was of the opinion that the plaintiff's evidence of injury from the accident was not challenged by the defendants. The present case, unlike *Brannan v. Slemp, supra,* presents a clear dispute as to the cause and extent of plaintiff's injuries. Plaintiff alleged that she sustained injuries to her knee, neck, and back in the accident with defendant. It was brought out at trial that plaintiff's knee had been previously injured and for some 20 years prior to the accident it had been treated and operated on, and plaintiff was on crutches at the time of the accident.

■ The jury's first verdict was for $100 special damages and no general damages. After the court again instructed the jury on damages they returned their verdict for general and special damages, on which the judgment was entered. We conclude that under the particular facts of this case the jury could properly return such a verdict and the court did not err in denying plaintiff's motion for a mistrial.

Affirmed.